**Thamur E. PENDLAND and Leslie Bell, Appellants,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Jan. 29, 1971.

Arthur L. Brooks, Lexington, for appellants.

John Breckinridge, Atty. Gen., Laura Murrell, Asst. Atty. Gen., Frankfort, for appellee.

OSBORNE, Judge.

This is an appeal from a judgment finding the appellants, Thamur E. Pendland and Leslie Bell, guilty of possessing marijuana contrary to the provisions of KRS 218.210 and fixing their punishment at three years in the penitentiary. We affirm the judgment.

Appellants Pendland and Bell, along with Pendland's son Gary, seventeen years old, were seen by Jack Estill and Leo Cropper in the act of cutting hemp (marijuana) on Estill's farm in Mason County. Estill blocked the gates, thus prohibiting them from taking their car out of the field, and called the sheriff. Gary Pendland entered a plea of guilty to the offense and admitted that he was cutting hemp and placing it in the trunk of the car. He also testified that, when he noticed the gate blocked, he stopped and took the hemp from the trunk of the car and threw it in a fencerow. As far as the basic facts of the case are concerned, Gary admitted everything the Commonwealth charged, but stated that he was the only party guilty and that his father and Bell had nothing to do with it. Pendland and Bell testified that they were drinking heavily on the occasion and did not know that Gary was harvesting the hemp.

Jack Estill's testimony concerning what he saw at the time that would connect the appellants with the offense is as follows:

"Q. 1 Would you state your name please?

A. Jack. Estill.

Q. 2 Where do you live Mr. Estill?

A. Mayslick, Kentucky.

Q. 3 On or about the 20th day of September, 1969, did you have occasion to be on a farm you handle out in the Mayslick neighborhood?

A. Yes sir.

Q. 4 What county is this farm located in?

A. Mason county.

Q. 5 Would you tell the jury exactly what happened at that time?

A. Well I had my nephew plow up the tobacco on this farm where

the road goes back there, and I saw this car go back there.

Q. 6 What is your nephew's name sir?

A. Leo Cropper.

Q. 7 You saw a car go back on the farm?

A. No I did not see the car go back right then, but he did, and I was putting the racks on the truck and happened to look over in the field and seen them riding around over there and cutting this stuff around trees, and I got in my truck and went over there and asked him if he saw a car go back, and he said he did.

Q. 8 Mr. Estill would you tell the jury exactly what you saw?

A. When I first saw them over there?

Q. 9 Yes sir.

A. I seen them have their boot up and cutting stuff around trees.

Q. 10 How many men did you see cutting?

A. Well there was two of them out.

Q. 12 And what would the people cutting this stuff do with it?

A. I guess they put it in the boot. I don't know. As soon as I saw the car there, I went over where they was at.

\* \* \* \* \* \*

Q. 30 Now you stopped them as you went back there?

A. Stopped them as I went back as they was closing the gate. I asked Les what he had been doing and he said squirrel hunting, and I said no that he had been cutting hemp, and he said no that they wouldn't do a thing like that, and I asked him if he would mind

opening his boot and letting me see, and he said there is no need of that, we have been back there cutting it.

Q. 31 Now Les Bell admitted to you at that time that they had been back there cutting it?

A. Yes sir he did."

Appellants rely on three grounds for reversal of the judgment.

1. Error of the court in permitting introduction of evidence obtained as a result of an illegal search.

2. Failure to prove the material in the possession of the appellants was marijuana.

3. Insufficiency of the evidence to support a conviction.

We will discuss these allegations in the order in which they are presented.

First, after the car had been stopped by Jack Estill by blocking the gate, the sheriff arrived. There is conflict between the parties on the question of exactly what transpired at this time. Appellants insist that the sheriff advised them that they should open the trunk of the car or that he would obtain a search warrant. The sheriff testified that they voluntarily opened the trunk of the car at his request and that no threat of obtaining a search warrant was made. We do not believe it necessary to explore the question of whether this was or was not a voluntary search. A hearing was had out of the presence of the jury by the trial court for the purpose of making a determination concerning the legality of the search. The trial court determined, upon the evidence heard, that the search did not violate the defendants' rights and that the evidence was admissible. No transcript of the testimony heard by the trial court at that time has been furnished this court upon appeal. Therefore, we must presume that the evidence supported the finding of the court.

Appellants' second contention for reversal is that the substance was not sufficiently proven to be marijuana. Upon the trial of the case, a chemist from Frankfort testified that he examined the plant and found it to be marijuana. A member of the sheriff's office testified that he mailed the box to Frankfort for analysis and that the box contained leaves from a plastic bag kept in his office. The sheriff identified the bag as the one brought to his office by deputy sheriff Ross, who had picked the bag up from Jack Estill's garage. Testimony in the case indicates that after the sheriff had taken the appellants from the scene of the offense, Jack Estill directed Leo Cropper, his nephew, to go back in the field and see if he could find where the marijuana had been thrown out of the car. Cropper found the marijuana in the fencerow where Gary had thrown it. He picked it up, placed it in a plastic trash bag and a basket, and put it in Jack Estill's garage. It remained in the garage for approximately a week before deputy sheriff Ross came by and picked it up and took it to the sheriff's office. The thrust of appellants' argument on this issue was that the garage was unlocked during this entire period of time and the bag was not marked in any way. Someone could have tampered with the bag while it was in Estill's garage. The proof is not sufficient to show that the bag picked up by Ross was the same one or in the same condition as the bag placed there by Cropper. While it is true that items offered in evidence must be properly identified and, after taken from the scene of the offense, their integrity must be properly preserved, the burden of the state to prove the integrity of the evidence is not absolute. All possibility of tampering does not have to be negated. It is sufficient in these cases that the actions taken to preserve the integrity of the evidence are reasonable under the circumstances. Brown v. Commonwealth, Ky., 449 S.W.2d 738 (1969). Here Leo Cropper identified the contents of the bag, as being those he placed there, by the hemp stems which were bent and broken. Since he identified the hemp as that he placed in the bag, this would negate any idea that it had been tampered with during the period of time that it remained in Estill's garage. In any event, we are not persuaded that a garage connected with a private home is not a safe place to preserve an item such as this, especially where there is no showing that anyone could have a reason to bother or tamper with it. There is no showing here that anyone actually tampered with the sample or had any reason to do so.

Appellants' final argument is that the evidence is insufficient to support the conviction for the possession of marijuana. Appellants were seen in the area cutting plants that were positively identified as marijuana. Estill testified that Bell admitted to him that they were cutting marijuana. The jury was not required to believe the appellants' contention that they had no knowledge of what was going on. We believe the evidence was sufficient.

Judgment affirmed.

All concur.