# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 14, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2016-SC-000542-MR

TREMEL J. SMITH                                                    APPELLANT

ON APPEAL FROM CHRISTIAN CIRCUIT COURT
V.              HONORABLE JOHN L. ATKINS, JUDGE
NO. 11-CR-00210

COMMONWEALTH OF KENTUCKY                              APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING IN PART AND REVERSING IN PART

On the night of February 28, 2011, Appellant, Tremel J. Smith, murdered his friend Susan James. Her body was discovered on the side of the road in Hopkinsville, Kentucky, on March 1, 2011. She was partially clothed, and a plastic bag was placed over her head. Her cause of death was determined to be blunt force trauma with some component of asphyxiation.

Investigating officers obtained a warrant to search Appellant's home after his roommate, Demondo Pettigrew, informed the police that he saw Appellant load what was later determined to be the victim's lifeless body into an unknown sport utility vehicle (SUV). During their search, officers discovered plastic garbage bags similar to the one found covering the deceased victim's head.

While the officers were searching the home, Appellant arrived at the scene. Keys to the SUV belonging to the victim were discovered in his coat pocket. The vehicle was parked near Appellant's home. A later strip search by the officers revealed that Appellant was wearing panties. Through DNA testing it was determined they belonged to the victim. Appellant was subsequently arrested, indicted, and tried.

One witness testified that Appellant approached her on the night of the murder attempting to procure drugs. Another witness testified that she believed Appellant traded a television for drugs. One of Appellant's fellow inmates testified that Appellant confessed to murdering the victim. Another inmate, Anthony Shelton, testified that Appellant admitted that he hit the victim "too hard" because she would not allow him to borrow her SUV.

A Christian County jury convicted Appellant of murder, kidnapping, first-degree robbery, knowingly receiving stolen property over $500, and tampering with physical evidence. He received a total sentence of life imprisonment without parole. Appellant now appeals his judgment and sentence as a matter of right pursuant to Section 110(2)(b) of the Kentucky Constitution.

### *Batson* Motion

Appellant argues that the trial court erred by denying his *Batson* motion after the Commonwealth used a peremptory challenge to strike Juror 12—an African-American—from the jury pool. *See Batson v. Kentucky,* 476 U.S. 79 (1986). When determining whether the trial court erred in applying *Batson,* we review the trial court's decision for an abuse of discretion. *Rodgers v.*

2

*Commonwealth*, 285 S.W.3d 740, 757 (Ky. 2009). The Commonwealth summarizes the prosecutor's race-neutral explanation for striking the potential juror as follows:

> Juror 12's demeanor heavily suggested bias toward the defense. He did not join the other jurors in laughing at the Commonwealth's moment of levity; he directed a hostile stare at the prosecutor; and he seemed engaged with the defense . . . . Furthermore, the Commonwealth felt that he did not have an understanding of the court process after speaking to him about his previous jury experiences.

Contrary to Appellant's assertion, these explanations are more than a mere "hunch."

Referencing a juror's problematic demeanor is a sufficiently race-neutral explanation in response to a *Batson* challenge. *Thomas v. Commonwealth*, 153 S.W.3d 772, 778 (Ky. 2004). Moreover, "[t]here is no requirement that a peremptory challenge must be disallowed if, as here, the judge simply does not observe the juror's demeanor." *Mash v. Commonwealth*, 376 S.W.3d 548, 557 (Ky. 2012). Therefore, the trial court did not abuse its discretion in denying Appellant's *Batson* motion and removing Juror 12 from the panel.

### Aggravator Evidence

This case began as a death penalty case. However, the trial court granted Appellant's motion to exclude the death penalty after it was revealed that he had an IQ score of 67. During the sentencing phase, the court permitted the jury to consider several statutory aggravators that would permit the jury to enhance Appellant's total sentence to life imprisonment without

3

parole. As previously noted, that was the total sentence recommended by the jury and imposed by the trial court.

During the sentencing phase, the jury was instructed to consider the following aggravating factors: (1) that the murder or kidnaping was committed during the course of a first-degree robbery; (2) that Appellant had a substantial history of serious assaultive criminal convictions; and (3) that the murder was committed "for profit." Only one of these circumstances needed to be present to enhance Appellant's sentence.

Although the jury convicted Appellant of first-degree robbery, they did not determine that to be an aggravator. Rather, the jury determined that the second and third circumstances were satisfied. Appellant argues that the trial court erred by permitting the jury to consider those aggravators.

The Commonwealth concedes that the prosecutor failed to present a substantial history of serious assaultive criminal convictions. Only one prior conviction was introduced. Of course, the statutory provision contemplates at least two convictions. KRS 532.025(2)(a)(1); *Wood v. Commonwealth*, 178 S.W.3d 500, 509 (Ky. 2005). Therefore, we agree with Appellant that the court erred by permitting the jury to consider that aggravator during the sentence phase. The court also erred in permitting the jury to consider the "murder-for-profit" aggravator. That provision states: "[t]he offender committed the offense of murder for himself or another, for the purpose of receiving money or any other thing of monetary value, or for other profit . . . ." KRS 532.025(2)(a)(4). Appellant argues that this aggravator only applies in "murder-for-*hire*" cases.

4

We disagree. The plain language of the statue is much broader. We addressed a similar issue in *Wilson v. Commonwealth*, 836 S.W.2d 872, 891 (Ky. 1992):

> The aggravating circumstance of robbery relates to the taking of the victim's property in the course of committing theft. KRS 515.020(1). The murder for profit aggravating circumstance goes beyond the time when her property was physically taken from her in the course of committing a theft. The credit cards of the victim were used the day after her death when Wilson and Humphrey purchased a number of items for themselves with the cards. Clearly, they obtained something of monetary value which profited them. Use of the credit cards is not the same act as the robbery of the victim. The two aggravating circumstances are not the same as to either time or place. The jury properly found the existence of two distinct aggravating factors.

However, in order for the jury in the present case to consider this aggravator, the Commonwealth must demonstrate that Appellant obtained from the victim something of monetary value or for other profit.

The Commonwealth confines its argument on this issue to the victim's stolen television and cites the testimony of Candice Culler in support. Ms. Culler lived at a house where crack cocaine was sold. She testified that Appellant was at her residence around midnight on the night of the murder. The next morning, there was a television in her house that had not been there the night before. She believed that Appellant had traded the television for drugs, although she did not witness the exchange. However, the witnesses referred to in the Commonwealth's opening statement, who may have supported this conclusion, never materialized. An investigating officer also testified that it appeared that the victim's television had been removed from her home, due to a gap in the dust present on her television stand. There was no evidence linking the television from Culler's home to Appellant or the victim.

5

This evidence is insufficient to satisfy the Commonwealth's burden. A missing television and Ms. Culler's testimony about an alleged exchange that she did not witness is not evidence from which the jury could have reasonably determined that Appellant stole the victim's television to purchase drugs. While one can guess and speculate, there is no evidence that Appellant "committed, the offense of murder for himself or another, for the purpose of receiving money or any other thing of monetary value, or for other profit . . . ." KRS 532.025(2)(a)(4). Therefore, the court erred in permitting the jury to consider the "murder-for-profit" aggravator.

Consequently, Appellant cannot face a new sentencing trial on any of the murder aggravators. To do so would violate the Fifth Amendment's Double Jeopardy Clause. *See Sattazahn v. Pennsylvania*, 537 U.S. 101, 112 (2003) ("If a jury unanimously concludes that a State has failed to meet its burden of proving the existence of one or more aggravating circumstances, double-jeopardy protections attach to that 'acquittal' on the offense of 'murder plus aggravating circumstance(s).'").

### Kidnapping Exemption

Appellant further asserts that the trial court erred by failing to apply the kidnapping exemption. The kidnapping exemption enumerated in KRS 509.050 provides:

> A person may not be convicted of . . . kidnapping when his criminal purpose is the commission of an offense defined outside this chapter and his interference with the victim's liberty occurs immediately with and incidental to the commission of that offense, unless the interference exceeds that which is ordinarily incident to

6

commission of the offense which is the objective of his criminal purpose.

Anthony Shelton testified that Appellant told him that he hit the victim "too hard" after she refused to let Appellant borrow her SUV. Demondo Pettigrew testified that he discovered the half-naked body of a woman, later determined to be the victim, lying near the kitchen of the home that he shared with Appellant. Pettigrew stated that he told Appellant that he thought the woman was not breathing and that they needed to call the police. Appellant replied that she was fine and that he was going to take her home. He then loaded her body into the SUV. As previously noted, the victim's body was later discovered with a plastic bag placed over her head and her cause of death was determined to be blunt force trauma with some component of asphyxiation.

By convicting Appellant of kidnapping, the jury must have concluded that Appellant hit the victim on the head, took the victim's SUV, transported her in the SUV to Appellant's home, and then smothered her with a garbage bag. This is further supported by the asphyxiation component of the victim's cause of death. Because the jury convicted Appellant of kidnapping, the jury implicitly found the victim was alive at the time Appellant abducted her. *Wood v. Commonwealth*, 178 S.W.3d 500, 507 (Ky. 2005) ("By finding Wood guilty of kidnapping Ms. Jones, the jury implicitly determined beyond a reasonable doubt that she was alive at the time he took her from her vehicle because one can kidnap only a living person."). Stated another way, if the jury believed the

7

victim was dead before she was taken from her home by Appellant, then the jury would not have found Appellant guilty of kidnapping.

Appellant's restraint and transportation of the victim was not incidental to the robbery or the murder. Rather, this conduct was well in excess of the restraint that is ordinarily incident to those crimes. Thus, because neither the murder nor robbery "occur[red] immediately with and incidental to" the kidnapping, it was not error for the trial court to refuse to apply the kidnapping exemption.

## Double Jeopardy

Appellant argues that convictions for first-degree robbery and knowingly receiving stolen property over $500 violate the Fifth Amendment's Double Jeopardy Clause. "[T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304 (1932); KRS 505.020(2)(a). "In applying the *Blockburger* test, the focus is on the proof necessary to prove the statutory elements of each offense rather than on the actual evidence which would be presented at trial." *Stewart v. Commonwealth,* 306 S.W.3d 502, 505 (Ky. 2010) (citing *Mack v. Commonwealth,* 136 S.W.3d 434, 438 (Ky. 2004)). KRS 514.110 provides the elements for receiving stolen property:

> (1) A person is guilty of receiving stolen property when he receives, retains, or disposes of movable property of another knowing that it has been stolen, or having reason to believe that it has been stolen, unless the property is received, retained, or disposed of with intent to restore it to the owner.

8

KRS 515.020 defines robbery as follows:

> (1) A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:
>
>> (a) Causes physical injury to any person who is not a participant in the crime; or
>>
>> (b) Is armed with a deadly weapon; or
>>
>> (c) Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime.

We agree with the Commonwealth that KRS 514.110 requires a theft for the property to be deemed stolen. Robbery does not require a completed theft. In further contrast to KRS 514.110, robbery requires the threat or use of force. *Cf. Roark v. Commonwealth*, 90 S.W.3d 24, 38 (Ky. 2002) ("[W]hile theft and attempted theft are lesser included offenses of robbery, receiving stolen property is not."). Therefore, there was no double jeopardy violation here.

## Opening and Closing Arguments

Appellant next complains that the prosecutor's statements during opening argument violated Appellant's right to confront witnesses. The Commonwealth stated that two witnesses would testify that Appellant traded the victim's television for crack cocaine. Two days later, those witnesses invoked their Fifth Amendment right against self-incrimination. Appellant has failed to demonstrate that the prosecutor knew that the witnesses would invoke their right not to testify prior to the Commonwealth's opening argument. As

9

previously discussed, additional evidence was introduced demonstrating that Appellant stole the victim's television in order to purchase drugs. Therefore, there was certainly no reversible error here.

Appellant also argues that the Commonwealth's closing argument was highly prejudicial and requires reversal of his conviction. We will reverse for prosecutorial misconduct in a closing argument only if:

the misconduct is "flagrant" *or* if each of the following is satisfied:

> (1) Proof of defendant's guilt is not overwhelming;
>
> (2) Defense counsel objected; and
>
> (3) The trial court failed to cure the error with a sufficient admonishment to the jury.

*Barnes v. Commonwealth,* 91 S.W.3d 564, 568 (Ky. 2002) (internal citations omitted) (original emphasis).

The issue here concerns a PowerPoint slideshow presented to the jury during the Commonwealth's closing argument, which read, "[Appellant] never mentioned how his pubic hair ended up on [the victim's] shirt." After the defense objected, the prosecutor informed the jury, "I'm not here to tell you today that those pubic hairs were one-hundred percent his. They weren't." A forensic scientist also testified during trial that he was unable to identify the source of the hairs.

Although the Commonwealth's slideshow was misleading when viewed in isolation, the prosecutor corrected her error and did not misrepresent the forensic evidence during trial. Therefore, the Commonwealth's conduct here was clearly not flagrant.

10

Moreover, the evidence supporting Appellant's guilt was overwhelming. As previously noted, multiple witnesses testified that they saw Appellant with the victim on the night of the murder. This includes Appellant's roommate who witnessed him load the victim's lifeless body into the victim's SUV at Appellant's house. Two of Appellant's fellow inmates also testified that Appellant confessed to murdering the victim. While being strip searched, officers discovered that Appellant was wearing panties which were later determined through DNA testing to belong to the victim. There was no reversible error here.

### Cumulative Error

Lastly, Appellant argues that his conviction should be reversed based on cumulative error. Under this limited doctrine, we will reverse only when the "individual errors were themselves substantial, bordering, at least, on the prejudicial." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). Any error that may have occurred in this case was certainly insufficient "to create a cumulative effect which would mandate reversal for a new trial." *Tamme v. Commonwealth*, 973 S.W.2d 13, 40 (Ky. 1998).

### Conclusion

For the foregoing reasons, we hereby affirm the judgment of the Christian Circuit Court in part and reverse it in part. We affirm Appellant's convictions for murder, kidnapping, first-degree robbery, knowingly receiving stolen property over $500, and tampering with physical evidence. Furthermore, because the jury found beyond a reasonable doubt the existence of the

11

aggravator that Appellant did not release the victim alive, his sentence of life without parole for the kidnapping conviction is also affirmed.

We vacate Appellant's sentence of life imprisonment without parole on the murder conviction and remand this case for a new sentencing on that charge.

All sitting. Minton, C.J.; Cunningham, Keller, VanMeter, and Wright, JJ., concur. Hughes and Venters, JJ., concur in result only.

COUNSEL FOR APPELLANT:

Karen Shuff Maurer
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Emily Lucas
Assistant Attorney General

Patricia Lynn Pryor
Commonwealth Attorney

12