RENDERED: JANUARY 15, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1900-MR

THOMAS SCOTT REEVES                                         APPELLANT

v.                  APPEAL FROM ESTILL CIRCUIT COURT
HONORABLE MICHAEL DEAN, JUDGE
ACTION NO. 18-CR-00013

COMMONWEALTH OF KENTUCKY                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, LAMBERT, AND K. THOMPSON, JUDGES.

COMBS, JUDGE: This is an appeal from a criminal case in which a jury found

Appellant, Thomas Scott Reeves (Reeves), guilty of trafficking in a controlled

substance, first degree, first offense, and of being a second-degree persistent felony

offender (PFO). He was acquitted of one count of trafficking in a controlled

substance, first degree, first offense. Reeves contends that the trial court erred in

denying his motion for a directed verdict and that the Commonwealth failed to establish a proper chain of custody.

On November 7 and 8, 2017, Captain John Sturniolo of the Irvine Police Department and a confidential informant (CI), Chris Bowman, set up controlled drug buys from Reeves.

On January 26, 2018, the Estill County Grand Jury charged Reeves with trafficking in a controlled substance, first degree, first offense (<2 Gms methamphetamine) on November 7, 2017; trafficking in a controlled substance, first degree, first offense (<2 Gms methamphetamine) on November 8, 2017; and of being a second degree persistent felony offender.

The case was tried on October 17, 2019. Captain Sturniolo of the Irvine Police Department testified. He explained the general procedure involved in using a CI for a controlled buy. Once a video from a hidden camera comes back, he actually views it with the CI present in the event that he has any questions.

Bowman made two controlled buys. After the first buy, Bowman came back to Captain Sturniolo's location at the police department. Captain Sturniolo received two small baggies with a crystalline substance inside. The quality of the video from the first buy on November 7 was not very clear. Another controlled buy was set up for the following day.

However, Captain Sturniolo testified that the quality of the video from the second buy was extremely good. On November 8, 2017, Captain Sturniolo searched Bowman's pockets, wired him up, and recorded the serial numbers on the bills to be used in the buy. Bowman then drove to the house in his own vehicle. He went to the front door and made contact with Reeves. They went to an outbuilding. Reeves was holding a bag with a crystalline substance; he spooned it out and filled a smaller bag. After Reeves sealed the bag, he handed it to Bowman. When Bowman returned to the police station, he handed Captain Sturniolo a small square blue baggie containing a crystalline substance.

Bowman appeared at trial, but he refused to testify and was held in contempt. The video recordings of the drug transactions were played for the jury. However, the video itself is not visible, and there is only minimal audio. The trial court ordered any hearsay statements to be redacted from the audio. Captain Sturniolo confirmed that the videos played for the jury accurately depicted those he recovered from Bowman.

Captain Sturniolo testified that he dropped off the baggies from both controlled buys for testing at the Kentucky State Police (KSP) lab in Frankfort. Captain Sturniolo retrieved them after they were tested and entered them back at the evidence locker at the Irvine Police Department.

Susan Robinson, a drug chemist at the KSP lab, testified. The lab received the evidence on March 22, 2018, person-to-person from Captain Sturniolo to James Williams (Williams). Ms. Robinson received two sealed plastic evidence bags. The bags were still sealed from the original agency. The "start date" of her analysis was March 27, 2018. She described the first piece of evidence (Lab #18-C-2558)[1] as one ziplock bag containing a colorless, crystalline solid weighing approximately .482 grams, which was found to contain methamphetamine. The second piece of evidence (Lab #18-C-2654) contained two ziplock bags. One was found to contain methamphetamine; no analysis was performed on the second bag consistent with lab policy. Both lab reports reflect that they were completed on March 28, 2018. After she completed an analysis, Ms. Robinson resealed the evidence and released it to the agency, per protocol. In this case, the evidence was released back to Captain Sturniolo on May 10, 2018.

Ms. Robinson testified that with every piece of evidence submitted, there is a request-for-examination form. If anything had been amiss when Captain Sturniolo brought in the evidence, Williams would have so notated on the form. Ms. Robinson was asked whether she received the evidence from Williams. She

---

[1] Reeves states that this bag is from the second buy, and the Commonwealth also notes that it is from the November 8, 2017, transaction.

was not sure, nor was she sure if someone other than Williams might have handled the evidence.

After the close of the Commonwealth's case, Reeves moved for a directed verdict of acquittal because there was no testimony from Bowman that he got the drugs from Reeves. The trial court denied the motion.

The jury convicted Reeves of first-degree trafficking in a controlled substance for the second transaction that occurred on November 8, 2017, and found him to be a second-degree PFO. On December 23, 2019, Reeves filed a Notice of Appeal to this Court from the final judgment entered on November 25, 2019.

On appeal, Reeves first argues that he was entitled to a directed verdict, alleging that without Bowman's testimony, the Commonwealth could not establish that a hand-to-hand transaction occurred.

*Commonwealth v. Benham*, 816 S.W.2d 186, 187-88 (Ky. 1991), explains that:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true,

> but reserving to the jury questions as to the credibility and weight to be given to such testimony.
>
> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.
>
> [T]he trial court is expressly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence.

(Citations omitted.)

Reeves observes that the Commonwealth relied on the video made from a hidden camera and on Captain Sturniolo's testimony. Reeves asserts that the video contained a lot of blacked-out portions and that the audio was faint. He claims that it does not even suggest that a drug deal was taking place. Reeves argues that Bowman's testimony was essential to prove that a transaction occurred and that "[t]his Court is now left to speculate if it was indeed Mr. Reeves on the video and if the drugs truly came from Mr. Reeves." We do not agree.

"It is for the jury to determine as best it can what is revealed in the tape recording without embellishment or interpretation by a witness." *See Gordon v. Commonwealth*, 916 S.W.2d 176, 180 (Ky. 1995). The Commonwealth contends that although they were played for the jury at trial, the videos were not made part of the record. Reeves does not dispute this contention in his reply brief. We have not discovered the videos played for the jury in the record provided to us.

"We will not engage in gratuitous speculation . . . based upon a silent record.  It has long been held that, when the complete record is not before the appellate court, that court must assume that the omitted record supports the decision of the trial court."  *Commonwealth v. Thompson*, 697 S.W.2d 143, 145 (Ky. 1985).

Reeves also argues that the Commonwealth failed to establish a proper chain of custody.  He contends that there was a failure to establish an internal chain of custody of the evidence either at the Irvine Police Department or at the KSP lab.  The Commonwealth argues that the issue was not properly preserved.  In his reply brief, Reeves requests that we review this for palpable error pursuant to RCr[2] 10.26.

> KRE[3] 901(a), governing the foundation required for the admission of tangible evidence [provides]:
>
>> The requirement of . . . identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims.
>
>> Logically, a proper foundation requires the proponent to prove that the proffered evidence was the same evidence actually involved in the event in question and that it remains materially unchanged from the time of the event until its admission.  The necessary foundation depends upon the nature of the evidence. . . .  [T]he more fungible the evidence, the more significant its condition,

---

[2] Kentucky Rules of Criminal Procedure.

[3] Kentucky Rules of Evidence.

or the higher its susceptibility to change, the more
elaborate the foundation must be. . . .

. . .

"Chain of custody" is not an end in itself, but a term of
art describing a means of proving an object's
authenticity. . . . Any gaps go to the weight, rather than
the admissibility of the evidence, and the proponent need
only demonstrate a reasonable probability that it has not
been altered in any material respect. . . . [T]he mere fact
that evidence has been misplaced, insecurely kept, or
unstored for a significant period of time is not *per se* fatal
to admissibility.

*Thomas v. Commonwealth*, 153 S.W.3d 772, 779, 781 (Ky. 2004) (internal

citations omitted).

Regardless of the alleged failure to preserve the issue for review, we

agree with the Commonwealth that there was no error. We are persuaded that the

testimony presented was sufficient to establish a proper chain of custody.

We AFFIRM the judgment of conviction in the Estill Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Kayla D. Deatherage
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky
Frankfort, Kentucky

Courtney J. Hightower, Assistant
Attorney General
Frankfort, Kentucky