**Bruce E. MOLLETTE, Appellant,**

v.

**KENTUCKY PERSONNEL BOARD and Kentucky Transportation Cabinet, Appellees.**

No. 1998–CA–001527–MR.

Court of Appeals of Kentucky.

July 30, 1999.

Johnny O. Bolton, Ed Spencer's Law Office, Paintsville, Kentucky, for Appellant.

Edwin A. Logan, Logan & Gaines, Frankfort, Kentucky, for Appellee.

Before: BUCKINGHAM, HUDDLESTON, and KNOPF, Judges.

## OPINION

KNOPF, Judge.

This is an administrative law termination of employment case in which the employee, Bruce E. Mollette, appeals the decision of the Franklin Circuit Court upholding the decision of the Kentucky Transportation Cabinet (Cabinet) and the Kentucky Personnel Board (Personnel Board) to terminate his employment based upon a positive drug test.

Mollette was employed as an equipment operator with the Cabinet in Martin County, Kentucky. Mollette was required to have a commercial driver's license (CDL) for this position. As an equipment operator, Mr. Mollette operated a truck and other heavy equipment classified as commercial vehicles.

On April 1, 1996, the Cabinet adopted and put into effect a "zero tolerance" drug and alcohol testing policy for employees who hold CDL licenses. Under the provisions of the policy as set forth in the Cabinet's Drug and Alcohol Testing Handbook for CDL Employees, a CDL holder performing safety-sensitive functions such as driving or operating a commercial vehicle is subject to random drug and alcohol testing. If the employee tests positive for any of five prohibited drug categories, that employee will be automatically dismissed. Mollette was subject to the zero tolerance policy since he was a CDL holder and operated commercial vehicles.

On December 16, 1996, Mollette was selected for a random drug test by the Cabinet. He went to the collection facility where he supplied a urine sample for drug testing. There were approximately 52 men providing samples for drug testing at the collection site on that day. No one personally observed Mollette while he provided his sample.

On January 2, 1997, Mollette was notified by the Cabinet that he had tested positive for cannabanoid (marijuana). Mollette was notified that as a result of the positive test, he would be dismissed from his employment effective January 17, 1997. A pretermination hearing was held on January 14, 1997. On January 17, 1997, the Cabinet issued a letter to Mollette advising him that he would be officially dismissed for cause from his position as an Equipment Operator effective the close of business on January 21, 1997. The reason for the dismissal was the positive test result by application of the zero tolerance policy. Mollette appealed the termination through administrative channels and a hearing was held on May 30, 1997, and June 30, 1997, before the Personnel Board.

At the hearing, the Cabinet introduced various records of the testing laboratory into evidence, including test results showing that Mollette had tested positive for marijuana. No witnesses were produced to testify that they had observed Mollette smoking marijuana or had observed him under the influence of marijuana. Mollette testified that he had not been smoking marijuana but had been around individuals who were smoking marijuana the weekend before the test.

The hearing officer, in her recommended order to the Personnel Board, found that the Cabinet had properly followed testing procedures and that the evidence was competent to establish the positive test results. She recommended that the dismissal be upheld. The hearing officer's recommended order was adopted by the Personnel Board and Mollette's firing was upheld. Mollette appealed the decision to the Franklin Circuit Court. The Franklin Circuit Court upheld the decision of the Personnel Board and this appeal followed.

Mollette first argues that the Personnel Board committed reversible error in admitting the records of the laboratory, PharmChem, which conducted the testing.

Mollette contends that the records constitute hearsay and were not competent to establish the results of his positive drug test.

■ The admission of the PharmChem laboratory records was proper. Hearsay evidence is admissible in an administrative hearing if it is the type of evidence that reasonable and prudent persons would rely on in their daily affairs. KRS 13B.090(1). This is true even though the hearsay evidence alone is not sufficient in itself to support an agency's findings of fact unless it would be admissible over objections in civil actions. *Id.* The laboratory evidence in this case would have been admissible in a civil action. Kentucky Rules of Evidence (KRE) 803(6) provides an exception to the hearsay rule by permitting the admission of records of regularly conducted activity. The rule permits the admission of any

memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

KRE 803(6). In our view, the testing data maintained by PharmChem falls under the business exception rule.

Mollette further argues that Pharm-Chem records were not competent because inadequate testimony was provided to establish chain of custody. Documents must be authenticated prior to their introduction into evidence. KRE 901. "The require-ment of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." KRE 901(a). This requirement may be met by the testimony of a witness with knowledge of the document by his testimony that the document is what it is claimed to be. KRE 901(b)(1).

■ While the integrity of weapons or similar items of physical evidence, which are clearly identifiable and distinguishable, does not require proof of a chain of custody, *see, Beason v. Commonwealth*, Ky., 548 S.W.2d 835, 837 (1977); and *Smith v. Commonwealth*, Ky., 366 S.W.2d 902, 906 (1962), a chain of custody is required for blood samples or other specimens taken from a human body for the purpose of analysis to show that the sample tested in the laboratory was the same sample drawn from the victim. *Calvert v. Commonwealth*, Ky.App., 708 S.W.2d 121, 124 (1986); *Haste v. Kentucky Unemployment Ins. Comm'n*, Ky.App., 673 S.W.2d 740 (1984); R. Lawson, *The Kentucky Evidence Law Handbook*, § 11.00 (3rd ed. Michie 1993); 32A C.J.S. *Evidence* § 797 (1996); *Rabovsky v. Commonwealth*, Ky., 973 S.W.2d 6, 8 (1998).

■ Even with respect to substances which are not clearly identifiable or distinguishable, it is unnecessary to establish a perfect chain of custody or to eliminate all possibility of tampering or misidentification, so long as there is persuasive evidence that "the reasonable probability is that the evidence has not been altered in any material respect." *United States v. Cardenas*, 864 F.2d 1528, 1532 (10th Cir. 1989), *cert. denied*, 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989). *See also Brown v. Commonwealth*, Ky., 449 S.W.2d 738, 740 (1969). Gaps in the chain normally go to the weight of the evidence rather than to its admissibility. *United States v. Lott*, 854 F.2d 244, 250 (7th Cir.1988); *Rabovsky*, 973 S.W.2d at 8.

Here, the chain of custody of Mollette's sample, as presented at the evidentiary hearing, was sufficient to establish the integrity of the sample. The chain of custody was established by various chain of custody forms which documented the handling of the sample throughout each phase of the testing process. Moreover, laboratory personnel testified as to the routine practice employed by Pharm-Chem in handling a specimen to be tested. Testimony as to routine practice sufficient to dispel any inference of substitution or change in the contents of the exhibit in question may be used to establish a chain of custody. *United States v. Burris*, 393 F.2d 81, 83 (7th Cir.1968). Upon review of the chain of custody evidence presented at trial, we cannot say that reversible error was committed by permitting the admission of the laboratory test results.

Mollette next argues that the hearing officer, Personnel Board, and Franklin Circuit Court committed reversible error by upholding his dismissal because there was insufficient evidence to support the termination of his employment. He contends that the hearing officer relied solely upon the PharmChem records and that no evidence was introduced to the effect that he had at any time exhibited signs of drug induced behavior.

Where an administrative agency's findings of fact are supported by substantial evidence, those findings are binding on the reviewing court. *Kosmos Cement Company, Inc. v. Haney*, Ky., 698 S.W.2d 819, 820 (1985); *Kentucky State Racing Commission v. Fuller*, Ky., 481 S.W.2d 298, 307 (1972). This is true even though there may be conflicting evidence in the record. *Kentucky Commission on Human Rights v. Fraser*, Ky., 625 S.W.2d 852, 856 (1981). *Urella v. Kentucky Board of Medical Licensure*, Ky., 939 S.W.2d 869, 873 (1997). The test of substantiality of evidence is whether when taken alone or in light of all the evidence it has sufficient probative value to induce conviction in the minds of reasonable men. *Fuller* at 307. The PharmChem lab tests disclosed that Mollette had evidence of marijuana in his system. PharmChem personnel, a chemist and a physician, testified that the test results established that Mollette had evidence of marijuana in his system. Although a fact finder may have chosen to believe Mollette's denials and reached a different conclusion in this case, there is clearly substantial evidence in the record to support the finding that Mollette used marijuana in violation of the Cabinet's zero tolerance policy. This, in turn, supports his termination of employment.

Finally, Mollette argues that the hearing officer committed reversible error by admitting the test results because production and storage of the urine sample was not performed in compliance with federal regulations. *See Mandatory Guidelines for Federal Workplace Drug Testing Programs*, Part 40—- Procedures for Transportation Workplace Drug Testing Programs, Section 40.25(b)(1). Specifically, Mollette argues that the collection site for obtaining his urine specimen was not secure on the basis that the waiting area adjacent to the rest rooms where the sample was obtained was filled with cigarette smoke.

The party asserting an affirmative defense has the burden to establish that defense. KRS 13B.090(7). The party with the burden of proof on any issue has the burden of going forward and the ultimate burden of persuasion as to that issue. *Id.* The only evidence offered by Mollette in support of his position that there was a violation of security standards is testimony to the effect that there was a significant amount of cigarette smoke in the area near where his sample was taken. However, there is nothing in the record supporting his contention that the presence of this cigarette smoke was a violation of federal standards or that it would contaminate the urine sample so as to give a false positive for marijuana use. "The party having the burden of proof before an administrative

agency must sustain that burden, and it is not necessary for an agency to show the negative of an issue when a prima facie case as to the positive has not been established." *Personnel Board v. Heck,* Ky. App., 725 S.W.2d 13, 17 (1986); *Koo v. Commonwealth of Kentucky, Department for Adult and Technical Education.,* Ky. App., 919 S.W.2d 531, 533 (1995). Mollette has accordingly failed to carry his burden of proof. KRS 13B.090(7).

For the foregoing reasons, the judgment of the Franklin Circuit Court is affirmed.

All concur.