RENDERED:  OCTOBER 8, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0581-MR

MIKE MARTINDALE													APPELLANT


APPEAL FROM WOODFORD CIRCUIT COURT
v.			HONORABLE BRIAN K. PRIVETT, JUDGE
ACTION NO. 18-CI-00101



EXECUTIVE BRANCH ETHICS
COMMISSION													APPELLEE


<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE:  COMBS, LAMBERT, AND McNEILL, JUDGES.

LAMBERT, JUDGE:  Mike Martindale, proceeding *pro se*, has appealed from the

order of the Woodford Circuit Court affirming the final order of the Executive

Branch Ethics Commission finding that he had violated the Executive Branch Code

of Ethics, Kentucky Revised Statutes (KRS) Chapter 11A, while he served as a

public servant and fining him $5,000.00.  We affirm.

KRS Chapter 11A sets forth the Executive Branch Code of Ethics (the Code of Ethics), which is designed to promote the ethical conduct of both present and former public servants.  KRS 11A.005 sets forth the statement of public policy:

(1) It is the public policy of this Commonwealth that a public servant shall work for the benefit of the people of the Commonwealth.  The principles of ethical behavior contained in this chapter recognize that public office is a public trust and that the proper operation of democratic government requires that:

(a) A public servant be independent and impartial;

(b) Government policy and decisions be made through the established processes of government;

(c) A public servant not use public office to obtain private benefits; and

(d) The public has confidence in the integrity of its government and public servants.

(2) The principles of ethical behavior for public servants shall recognize that:

(a) Those who hold positions of public trust, and members of their families, also have certain business and financial interests;

(b) Those in government service are often involved in policy decisions that pose a potential conflict with some personal financial interest; and

(c) Standards of ethical conduct for the executive branch of state government are needed to determine those conflicts of interest which are substantial and material or which, by the nature of the conflict of interest, tend to bring public servants into disrepute.

The Executive Branch Ethics Commission (the Commission), established in KRS 11A.060, is charged with enforcing the provisions of the Code of Ethics, investigating any alleged violations, and initiating an administrative proceeding to determine whether a violation has taken place. *See* KRS 11A.080.

Martindale worked as an Inspector I for the Public Protection Cabinet, Department of Housing, Building, and Construction (the Department), specifically as an HVAC field inspector, from May 1, 2010, through November 4, 2015. He submitted a letter of resignation on October 20, 2015, in which he provided his two weeks' notice. In his position as an Inspector I, Martindale was a public servant as defined by KRS 11A.010(9).[1] In January 2016, the Commission received a referral from the Department and thereafter began an ethics investigation of Martindale.

---

[1](9) "Public servant" means:

(a) The Governor;

(b) The Lieutenant Governor;

(c) The Secretary of State;

(d) The Attorney General;

In its investigation, the Commission was charged with determining whether Martindale had violated the Code of Ethics by using his official position to obtain a financial gain, among other violations. The Commission entered an Initiating Order in July 2016 indicating that it found probable cause to believe that Martindale had violated the Code of Ethics and initiated an administrative proceeding as a result. It alleged that September 11, 2015, Martindale had used his official position as an HVAC Inspector to access confidential and personal contact information concerning HVAC licensees who were regulated by the Department. He accessed this information by running a report in the internal Jurisdiction Online (JO) system and then gave this information to his wife, Velicia Martindale, who had started TRADETECH, an online company in the business of providing HVAC and plumbing continuing education.[2] Martindale and/or his wife used this confidential contact information to solicit licensees to take the TRADETECH

---

(e) The Treasurer;
(f) The Commissioner of Agriculture;

(g) The Auditor of Public Accounts;

(h) All employees in the executive branch including officers as defined in subsection (7) of this section and merit employees; and

(i) Any person who, through any contractual arrangement with an agency, is employed to perform a function of a position within an executive branch agency on a full-time, nonseasonal basis[.]

[2] Martindale and his wife lived together in Versailles, Kentucky, and they filed joint federal and state tax returns.

classes. By April 27, 2016, licensees regulated by the Department had used TRADETECH's online classes more than 800 times. Accordingly, the Commission charged Martindale with violating KRS 11A.020(1)(c) and (d), KRS 11A.020(2), and KRS 11A.040(1).[3]

Martindale, proceeding without counsel, responded to the Initiating Order, denying that he had used his former position for financial gain for himself or his wife's business and that he believed the ethics complaint was filed in retaliation for issues he had previously raised to Roger Banks and Tim Crick.[4] He also stated that he had run the report with all of the licensee information hundreds

---

[3] KRS 11A.020 states in relevant part:

> (1) No public servant, by himself or through others, shall knowingly:
>
> . . .
>
> > (c) Use his official position or office to obtain financial gain for himself or any members of the public servant's family; or
> >
> > (d) Use or attempt to use his official position to secure or create privileges, exemptions, advantages, or treatment for himself or others in derogation of the public interest at large.
>
> (2) If a public servant appears before a state agency, he shall avoid all conduct which might in any way lead members of the general public to conclude that he is using his official position to further his professional or private interest.

KRS 11A.040(1) states: "A public servant, in order to further his or her own economic interests, or those of any other person, shall not knowingly disclose or use confidential information acquired in the course of his or her official duties."

[4] Banks and Crick were Martindale's supervisors when he worked for the Department. Banks was the Assistant Director/Acting Director, and Crick was the Field Operations Manager, of the HVAC Division of the Department.

of times as it was in the scope of his job duties; other inspectors and managers ran these reports as well, he assumed. He denied sharing any information with TRADETECH and stated that his wife had obtained her information from a list on the Department's website.

The assigned Hearing Officer held an administrative hearing on August 30 and 31, 2017. Martindale continued to claim that the ethics complaint was in retaliation for reporting issues with the hiring of Greg Birge as well as other complaints. In his opening statement, he stated that he "at no time ever gave any information to anyone, and this is all due to retaliation and it started with Tim[.]" During the second day, the Hearing Officer told Martindale "to confine your questions to this issue and this issue only – is whether or not you can refute the allegations that you were using your position as an employee to benefit yourself economically or your wife's business. That's the issue."

Pursuant to the Hearing Officer's direction, the parties filed written closing statements setting forth their respective positions. In its filing, the Commission pointed out that Martindale "provided no evidence that he or his wife obtained the contact information for the HVAC licensees independently from his use of the JO system. If Mrs. Martindale had gathered the contact information for 38,000 HVAC licensees throughout the Commonwealth, common sense would dictate that she would have records to show her efforts." Based upon the evidence

presented, the Commission asserted that it had proven Martindale had violated the listed sections of the Code of Ethics and, as a penalty, recommended a $5,000.00 fine, a public reprimand, and the issuance of a cease and desist order with the instruction that he return the JO reports he had uploaded from the system.

In his closing statement, Martindale argued that the Commission had not supplied any "real" evidence, such as evidence that running these reports was not in his job description or that he had broken any policy. He described the information submitted at the hearing by the Commission as hearsay. In addition, Martindale stated that the ethics complaint was brought purely in retaliation after he submitted his letter of resignation on October 20, 2015, which had included allegations against the Department. He also disputed much of the testimony and evidence submitted at the hearing. In its reply, the Commission pointed out that Martindale failed to defend against the charges but used his opportunities at the hearing and in his closing statement to inappropriately focus on his retaliation claim against the Department.

The Hearing Officer entered his findings of fact, conclusions of law, and recommended order, after which both parties filed exceptions. The Commission then entered a final order on March 19, 2018. In the final order, the Commission found that Martindale's actions constituted a "clear violation" of KRS 11A.020(1)(c) and (d), KRS 11A.020(2), and KRS 11A.040(1). It stated that:

By his corrupt actions, Martindale betrayed the trust accorded to him by the HVAC division, disclosed confidential information obtained in the course of his official duties to further his own economic interests, financially benefited from his misdeeds and thereby obtained a financial gain, and in so-doing acted in derogation of and contrary to his duties as a trusted field inspector.

As a penalty, the Commission imposed the maximum monetary penalty of $5,000.00:

In reaching this conclusion, the Commission states that the violation was a serious one in that Martindale took advantage of his position of trust as an Inspector and exploited it to the financial benefit of his wife, and hence for himself in derogation of his duties as an inspector. From the evidence presented in this case, Martindale accessed the [JO] site in early March, 2015. Thereafter, in September 2015, Martindale swept up all the HVAC licensee data from the JO system, sorted by birth month. This was a flagrant and repeated violation. Finally, there is clear and convincing evidence that Martindale substantially profited from his misdeeds, in that as calculated by the Commission his wife's business grossed approximately $15,000. Although Martindale disputed this amount in his response, he did not present any evidence at the administrative hearing that this amount was incorrect or failed to take [into] account any related expenses.

In addition, the Commission ordered Martindale to immediately cease and desist using the data obtained from the JO system; ordered him to submit all copies of the data downloaded between March 22, 2015, and September 11, 2015, to the

-8-

Commission, which would transmit the data files to the Department; and issued a public reprimand.

Martindale opted to exercise his right to appeal the Commission's final order in an original action filed in the Woodford Circuit Court pursuant to KRS 13B.140. He sought the following relief:

> For this case to be heard and the final order to be dismissed based on the facts the Ethics Commission never provided any evidence I downloaded, printed or provided any documentation to anyone. All of the information is based on What If and Hypothetical. And for the Ethics Commission to face charges for bring[ing] and pursuing a case brought on false allegations once they were informed and failing to Serve the Commonwealth of Kentucky when they failed to investigate my case I had brought to them that this was a result of direct retaliation against me being a so called WHISTLEBLOWER. And allowing an individual Greg Birge to continue to work for the [Department] after they were informed he was hired illegally by Roger Banks and Tim Crick.

In its answer, the Commission stated that Martindale's complaint failed to state a claim upon which relief could be granted and that it should be dismissed.

The court set up a briefing schedule for the parties to present their cases. Martindale's brief focused on his belief that he had been subjected to retaliation for his complaints about problems in the Department. He also stated that he had not misused or sought personal gain through his position with the Department and that the Commission's evidence was circumstantial. In its brief,

the Commission argued that it had not acted arbitrarily and that substantial evidence established that Martindale had violated multiple provisions of the Code of Ethics by accessing confidential information through his position with the Department. The court held a hearing on September 11, 2019. Martindale continued to argue the Commission did not present any evidence at the administrative hearing. He claimed the information he obtained was of public record and that the Commission's witnesses lied at the hearing. He again brought up his retaliation claim regarding an ethics violation that he reported. The court entered an order affirming on April 2, 2020, and this appeal now follows.

KRS 13B.150 sets forth the process of judicial review from decisions made by an administrative agency:

> (1) Review of a final order shall be conducted by the court without a jury and shall be confined to the record, unless there is fraud or misconduct involving a party engaged in administration of this chapter. The court, upon request, may hear oral argument and receive written briefs.[5]
>
> (2) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the final order or it may

---

[5] This subsection was amended, effective February 2, 2021, to state:

> Except as provided in KRS 452.005, review of a final order shall be conducted by the court without a jury and shall be confined to the record, unless there is fraud or misconduct involving a party engaged in administration of this chapter. The court, upon request, may hear oral argument and receive written briefs. Challenges to the constitutionality of a final order shall be reviewed in accordance with KRS 452.005.

reverse the final order, in whole or in part, and remand the case for further proceedings if it finds the agency's final order is:

> (a) In violation of constitutional or statutory provisions;
>
> (b) In excess of the statutory authority of the agency;
>
> (c) Without support of substantial evidence on the whole record;
>
> (d) Arbitrary, capricious, or characterized by abuse of discretion;
>
> (e) Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;
>
> (f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or
>
> (g) Deficient as otherwise provided by law.

KRS 13B.160 provides for a further appeal in this Court: "Any aggrieved party may appeal any final judgment of the Circuit Court under this chapter to the Court of Appeals in accordance with the Kentucky Rules of Civil Procedure."

This Court's standard of review in an appeal from an administrative action "is limited to determining whether the decision was erroneous as a matter of law." *McNutt Construction/First General Services v. Scott*, 40 S.W.3d 854, 860 (Ky. 2001). The former Court of Appeals held that "judicial review of

-11-

administrative action is concerned with the question of *arbitrariness*." *American Beauty Homes Corp. v. Louisville and Jefferson Cty. Planning and Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964).  In *Parrish v. Commonwealth*, 464 S.W.3d 505, 509-10 (Ky. App. 2015), we further explained our role in the appellate process:

> A party aggrieved by the circuit court's final judgment may then appeal to the Court of Appeals.  KRS 13B.160.  In reviewing an agency decision, we must be ever mindful of our limited role.  If the agency's decision is supported by substantial evidence, we must uphold that decision, even if there is conflicting evidence in the record and even if we might have reached a different conclusion.  *500 Associates, Inc. v. Natural Res. & Envtl. Prot. Cabinet*, 204 S.W.3d 121, 131 (Ky. App. 2006).
>
> Substantial evidence does not mean that the record could not support any other conclusion.  "The test of substantiality of evidence is whether when taken alone or in the light of all the evidence it has sufficient probative value to induce conviction in the minds of reasonable men." *Kentucky State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972).  If there is substantial evidence in the record to support the Board's findings, they will be upheld, despite other conflicting evidence in the record. *Kentucky Comm'n on Human Rights v. Fraser*, 625 S.W.2d 852, 856 (Ky. 1981); *see also* KRS 13B.150(2).  We may not reinterpret or reconsider the merits of the claim, nor can we substitute our judgment for that of the agency as to the weight of the evidence. *Id*.  We further note that "[i]n its role as a finder of fact, an administrative agency is afforded great latitude in its evaluation of the evidence heard and the credibility of witnesses[.]" *Aubrey v. Office of Attorney Gen.*, 994 S.W.2d 516, 519 (Ky. App. 1998); *see also McManus v.*

-12-

> *Kentucky Ret. Sys.*, 124 S.W.3d 454, 458 (Ky. App. 2003).

With this in mind, we shall consider Martindale's argument.

As he has throughout this process, Martindale bases his argument for reversal on his disagreement with the Commission's findings of fact. He asserts that the Commission did not introduce any evidence that he had downloaded, printed, or provided any documentation to anyone; that any evidence submitted was circumstantial; and that the ethics charge was brought in retaliation for his being a whistleblower. We agree with the Commission that the final order was supported by substantial evidence introduced at the administrative hearing.

We have reviewed the testimony and evidence introduced at the two-day administrative hearing, and we hold that the findings of the Commission in the final order were not arbitrary and that its conclusion that Martindale violated several provisions of the Code of Ethics was proper:

> 42. In reviewing the unchallenged clear and convincing evidence, it is clear to the Commission that Martindale was (1) a public servant at the time the violations occurred and (2) he violated KRS 11A.020(c) and (d), KRS 11A.020(2), and KRS 11A.040(1) on multiple occasions beginning in March, 2015, when he conducted a test run of his access to all of the JO licensee records. Thereafter, in September 2015, Martindale made twelve (12) open records requests[6] and effectively exported to an Excel file all of the HVAC licensee

---

[6] Searches within JO are referred to as open records requests. These should not be confused with Open Records Requests pursuant to KRS Chapter 61.870 to 61.884. (Footnote 6 in original.)

-13-

information, sorted by birth month. The evidence is also unrefuted that Martindale had no work-related reason to access all of these records. As noted by Banks and Crick, if an Inspector was using the [JO] program, it would be for the limited purpose of checking the license of an individual HVAC licensee or to determine which installation permits needed to be approved.

43. The link between Martindale's unauthorized access of this data and its use by TRADETECH is also unambiguous. In late September, advertising flyers were sent to HVAC licensees advertising the availability of TRADETECH's on line courses. Notably, some of these emails were sent to the personal email address of the licensees, information that would not be available to the general public through a routine open records request. The circumstantial evidence is therefore overwhelming that Martindale used his official position as a Field Inspector I to access the [JO] data system to his own benefit or to the benefit of others (specifically his wife). Martindale also personally profited from his actions in that his wife sold to HVAC licensees online courses at twenty dollars ($20.00) per two-hour course. As to this issue it should be once again noted that TRADETECH is an unincorporated entity and Michael and Velicia Martindale file joint tax returns.

In upholding the final order, the circuit court stated that "[t]he evidence presented at the hearing was detailed, and of enough volume to support the Commission of meeting their burden of proof and findings by a preponderance of evidence." The court also recognized that Martindale was hindered by proceeding without legal counsel, in that "[t]he evidence he presented at the Ethics Commission hearing, as well as tendered to this [c]ourt shows that he does not understand the nature of these procedures, and that he may have wanted to try

-14-

other avenues for relief." Accordingly, the circuit court did not commit any error in upholding the final order of the Commission.

For the foregoing reasons, the Woodford Circuit Court's order affirming the final order of the Commission is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Michael Martindale, *pro se*
Versailles, Kentucky

BRIEF FOR APPELLEE:

Michael W. Board
Kathryn H. Gabhart
Frankfort, Kentucky