RENDERED: NOVEMBER 1, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0687-MR
AND
NO. 2023-CA-0714-MR

KENTUCKY STATE UNIVERSITY        APPELLANT/CROSS-APPELLEE

v.        APPEAL AND CROSS-APPEAL FROM
FRANKLIN CIRCUIT COURT
HONORABLE PHILLIP J. SHEPHERD, JUDGE
ACTION NO. 16-CI-01086

KARAH STOKES        APPELLEE/CROSS-APPELLANT

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; COMBS AND LAMBERT, JUDGES.

LAMBERT, JUDGE: These matters relate to the termination, for cause, of Dr.

Karah Stokes's employment as a tenured professor at Kentucky State University

(KSU). KSU seeks review of the Franklin Circuit Court's decision that Stokes had

been denied due process when she was suspended and removed from the payroll

without being afforded a pre-termination hearing and that she was entitled to back

pay and benefits. Stokes cross-appeals from the circuit court's decision that her termination was supported by substantial evidence. Having carefully considered the record and the parties' arguments, we affirm.

Stokes worked for KSU as a fulltime faculty member in the Division of Literature, Language, and Philosophy from 1997 until the Spring semester of 2016. She was tenured in 2002 or 2003, and KSU promoted her to a fulltime professor in 2008. During the course of the 2015-2016 school year, several incidents involving Stokes took place, which included her response to a student who requested accommodation in one of her classes, her response to allegations of plagiarism and threats in another of her classes, and her treatment of other faculty members. This culminated in a meeting on March 2, 2016, when Gordon A. Rowe, Jr., from KSU's Office of General Counsel, presented Stokes with an unsigned charging document seeking her termination and removal as a tenured faculty member pursuant to Kentucky Revised Statutes (KRS) 164.360(3). Stokes left the room shortly thereafter. A letter dated March 4, 2016, to Stokes from KSU's Vice President for Academic Affairs, Lynda Brown-Wright, advised that Stokes had ten days to voluntarily resign or KSU would begin the termination proceedings. After a series of correspondence between Stokes's attorney and Rowe, Raymond M. Burse, who was at that time the President of KSU, issued the signed charge on April 22, 2016. The specific charges were as follows:

1) Dr. Stokes refused to offer an accommodation for a student with a disability, even though that disability could have been reasonably accommodated. Section 2.9.2(j) of the Faculty Handbook prohibits faculty members from discriminating against any person on the basis of disability. Dr. Stokes's denial of the requested accommodation for this student's disability was discriminatory and constituted neglect or refusal to perform her duty to offer instruction without respect to a student's disability, which is cause for termination under KRS 164.630(3);

2) Dr. Stokes removed students from her class and excluded students from her class without due process. Dr. Stokes accused four students of academic violations during Fall Semester 2015 and then prevented them from attending her class. However, those students had the right to attend class while the accusations were being reviewed upon appeal [*See* KSU Student Handbook, Section on Standards Governing Student Conduct]. Dr. Stokes's failure to abide by this policy constitutes a neglect or refusal to perform her duties, which is cause for termination under KRS 164.360(3);

3) Dr. Stokes improperly prevented Dr. Erin Wheeler[1] and Dr. Lorna Shaw[2] from observing her class, even though Dr. Wheeler and Dr. Shaw are faculty members and part of the Academic Affairs executive leadership. Section 2.9.2(a) of the Faculty Handbook requires faculty members to "respect the rights of all campus members to pursue their academic and administrative activities." Dr. Stokes allowed Dr. Wheeler and Dr. Shaw to enter her class on one occasion but subsequently informed them that they were not to return. Dr. Stokes's actions hindered Dr.

---

[1] The Assistant Vice President for Academic Support Services.

[2] The KSU Dean.

Wheeler and Dr. Shaw's efforts to assess how they could further provide needed and appropriate academic assistance to students in Dr. Stokes's classes, consequently inhibiting them from fulfilling their academic and administrative duties. The actions of Dr. Stokes in this regard constitute a neglect or refusal to perform her duties, which is cause for termination under KRS 164.630(3); and

4) On October 20, 2015, academic counselor Travis Haskins reported to the Vice President of Academic Affairs, Dr. Lynda Brown-Wright, that Dr. Stokes spoke to him in an offensive manner regarding an incident that occurred the previous day in relation to one of her classes and threatened to have him removed by police if he returned to her class again. Section 2.9.2(b) of the Faculty Handbook requires faculty members to "act with propriety in all dealings with members of the University community." The actions of Dr. Stokes in this incident constitute a neglect or refusal to perform her duty to act with propriety in dealing with Mr. Haskins, which is cause for termination under KRS 164.360(3).

In addition to constituting a neglect or refusal to perform her duties, President Burse stated that Dr. Stokes's actions "were detrimental to KSU's students and faculty, violated [her] obligations to students and fellow faculty members, and have done harm to the goodwill and reputation of KSU[.]" He therefore recommended that the Board remove Dr. Stokes from the faculty. By letter dated April 29, 2016, Stokes denied the allegations and requested a meeting with the Board.

-4-

KSU continued to pay Stokes until September 2016, when the Board suspended Stokes without pay and removed her from the faculty roster. In response, Stokes filed a complaint in Franklin Circuit Court the following month alleging due process violations, including that she had been suspended without a pre-termination hearing, during which she could have refuted the reason for her unpaid suspension. Stokes sought injunctive relief, including reinstatement to her tenured position until KSU had complied with the due process procedures, a finding that KSU had violated policy and law in violation of Section II of the Kentucky Constitution, compensatory damages and damages for embarrassment and humiliation, and costs. In its answer, KSU disputed Stokes's allegations and raised several affirmative defenses, including immunity and her failure to exhaust her administrative remedies. In March 2017, Stokes moved to hold this action in abeyance pending a hearing before the Board, which the circuit court granted.

Returning to the administrative action, in October 2017, KSU issued a notice of administrative appeal related to the charges, and the parties agreed that the proceedings would be conducted pursuant to KRS Chapter 13B. The Office of the Attorney General (OAG) assigned a hearing officer, who conducted an evidentiary hearing on January 11 and 12, 2018, to determine what recommendation to make to the Board. Stokes and KSU presented witness testimony and documentary exhibits (including the transcript of a meeting Stokes

had recorded) that addressed the implementation of a new accelerated learning program, classroom observation by faculty, issues with students – including plagiarism and threats – that Stokes had in one of her classes along with how Stokes handled these issues with another faculty member, and the request for accommodation by another student. The parties filed post-hearing briefs setting forth their respective positions.

The hearing officer then entered his findings of fact, conclusions of law, and recommended order on June 15, 2018. He recommended a finding that KSU satisfied the requirements of KRS 164.360(3) based upon Stokes's conduct and that the Board issue a final order terminating Stokes from the KSU faculty and upholding her suspension without pay beginning September 16, 2016, through the date of the Board's final order. The hearing officer found that Stokes's due process rights had not been violated and that she was not entitled to back pay. The Board entered its final order on July 23, 2018, in which it accepted the hearing officer's findings of fact, conclusions of law, and recommended order, without exception, and affirmed Stokes's termination and suspension without pay.

The matter then returned to the circuit court, and Stokes, on her motion, was permitted to file a first amended complaint seeking reinstatement of her tenured position and compensatory damages under 42 United States Code

(U.S.C.) § 1983[3] and Section 2 of the Kentucky Constitution.[4]  Stokes specifically raised three issues:  1) whether the Board's decision to terminate her was supported by substantial evidence; 2) whether her due process rights were violated when she was not given either a pre-termination hearing or a fair hearing; and 3) whether the Board acted arbitrarily or capriciously.

KSU moved the court for summary judgment in August 2019, arguing that the Board's final decision was supported by substantial evidence.  It also argued that Stokes had been afforded a hearing on the charges against her, that there was no provision for a pre-termination hearing other than the hearing as set forth in KRS 164.360(3), that she received due process, and that she was not entitled to relief under 42 U.S.C. § 1983 because KSU was not a person and could not be liable to her under the federal statute.  Stokes, in response, stated that KSU's decision was arbitrary and capricious, that she had been denied her due process rights in the arbitrary decision, that she had not been afforded a fair hearing, and

---

[3] 42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

[4] "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

that KSU was the proper party for her 42 U.S.C. § 1983 claim. She also argued that she was entitled to a pre-termination hearing, citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985), and *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). In its reply, KSU argued that Stokes did not have a statutory right to a pre-termination hearing related to her suspension without pay. Here, the hearing officer conducted a pre-determination hearing (the administrative hearing), which led to the determination that the charges were supported by sufficient evidence and that Stokes should be terminated.

The circuit court entered an opinion and order on January 3, 2022, in which it granted in part and denied in part KSU's motion for summary judgment. The court held that KSU violated Stokes's constitutional due process rights when it failed to hold a pre-termination *Loudermill* hearing, but that the post-termination hearing complied with due process and the Board's decision to uphold her termination was supported by substantial evidence. Stokes, it stated, should have been given the opportunity to respond to the allegations before her pay was stopped, meaning that she was entitled to back pay from September 16, 2016, through the administrative hearing in June 2018. The court withheld the entry of a final and appealable order until it could determine the amount of back pay Stokes was owed and whether she was entitled to any other relief for the violation of her

-8-

procedural due process rights pursuant to 200 Kentucky Administrative Regulations (KAR) 12:030.  The parties briefed that issue.

In a renewed motion for summary judgment filed in February 2023, KSU asserted that Stokes had essentially been provided with a pre-termination hearing at the March 2, 2016, meeting, during which Rowe presented her with the unsigned charging document.  KSU provided notes and summaries regarding that meeting.  These notes reflected that Stokes became upset after Rowe presented her with the charges and left the meeting.  In its April 20, 2023, order, the circuit court held that the notes were not enough to meet the *Loudermill* standard and denied the motion for summary judgment.  The court stated, "Stokes was suspended without pay after she was presented with some of the charges against her, but before she was able to present her side to any authorized authority who could [provide] her relief."  In addition, "she was not given an adequate opportunity to present her side of the story when she was presented with an unsigned copy of the charges against her."  Stokes was not provided with a hearing or an opportunity to respond until 2018.  Therefore, the court ordered that she was entitled to her salary and benefits – offset by the money she earned during the two-year period from her employment at Eastern Kentucky University – from the date she was suspended without pay to the date she was afforded a hearing.  It then scheduled a damages hearing.

The circuit court ultimately entered a final judgment on May 18, 2023,[5] awarding Stokes $115,822.80, the amount of gross salary and benefits she would have received during the 22-month period, as Stokes had requested. The court reiterated that even though it held that she had properly been dismissed, KSU violated Stokes's contract rights when it "summarily remov[ed] her from the payroll without any pre-termination hearing[.]" Both parties have appealed. KSU seeks review of the circuit court's decision to award Stokes back pay and benefits based upon a due process violation, and Stokes seeks review of the decision to terminate her employment.

KRS 13B.150 sets forth the process of judicial review from an administrative agency's decision:

> (1) Except as provided in KRS 452.005, review of a final order shall be conducted by the court without a jury and shall be confined to the record, unless there is fraud or misconduct involving a party engaged in administration of this chapter. The court, upon request, may hear oral argument and receive written briefs. Challenges to the constitutionality of a final order shall be reviewed in accordance with KRS 452.005.

> (2) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the final order or it may reverse the final order, in whole or in part, and remand

---

[5] The court entered an amended final judgment, by agreement, on June 5, 2023. The amended final judgment provided that the damages were awarded only against KSU and dismissed the Board and the interim KSU president.

the case for further proceedings if it finds the agency's final order is:

> (a) In violation of constitutional or statutory provisions;
>
> (b) In excess of the statutory authority of the agency;
>
> (c) Without support of substantial evidence on the whole record;
>
> (d) Arbitrary, capricious, or characterized by abuse of discretion;
>
> (e) Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;
>
> (f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or
>
> (g) Deficient as otherwise provided by law.

KRS 13B.160, in turn, provides for further review in the Court of Appeals: "Any aggrieved party may appeal any final judgment of the Circuit Court under this chapter to the Court of Appeals in accordance with the Kentucky Rules of Civil Procedure."

This Court's standard of review in an appeal from an administrative action "is limited to determining whether the decision was erroneous as a matter of law." *McNutt Constr./First Gen. Servs. v. Scott*, 40 S.W.3d 854, 860 (Ky. 2001).

The former Court of Appeals instructed that "judicial review of administrative action is concerned with the question of *arbitrariness*." *Am. Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964).

> Three grounds exist for finding that an agency's decision was arbitrary: (1) the agency acted in excess of its statutory powers, (2) the agency did not afford procedural due process, and (3) the agency's decision was not supported by substantial evidence.

*Baesler v. Lexington-Fayette Urban County Gov't*, 237 S.W.3d 209, 212 (Ky. App. 2007) (citing *Am. Beauty Homes*, *supra*).

In *Parrish v. Commonwealth*, 464 S.W.3d 505, 509-10 (Ky. App. 2015), we further explained this Court's role in the appellate process:

> A party aggrieved by the circuit court's final judgment may then appeal to the Court of Appeals. KRS 13B.160. In reviewing an agency decision, we must be ever mindful of our limited role. If the agency's decision is supported by substantial evidence, we must uphold that decision, even if there is conflicting evidence in the record and even if we might have reached a different conclusion. *500 Associates, Inc. v. Natural Res. & Envtl. Prot. Cabinet*, 204 S.W.3d 121, 131 (Ky. App. 2006).

> Substantial evidence does not mean that the record could not support any other conclusion. "The test of substantiality of evidence is whether when taken alone or in the light of all the evidence it has sufficient probative value to induce conviction in the minds of reasonable men." *Kentucky State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972). If there is substantial evidence in the record to support the Board's findings,

they will be upheld, despite other conflicting evidence in the record. *Kentucky Comm'n on Human Rights v. Fraser*, 625 S.W.2d 852, 856 (Ky. 1981); *see also* KRS 13B.150(2). We may not reinterpret or reconsider the merits of the claim, nor can we substitute our judgment for that of the agency as to the weight of the evidence. *Id*. We further note that "[i]n its role as a finder of fact, an administrative agency is afforded great latitude in its evaluation of the evidence heard and the credibility of witnesses[.]" *Aubrey v. Office of Attorney Gen.*, 994 S.W.2d 516, 519 (Ky. App. 1998); *see also McManus v. Kentucky Ret. Sys.*, 124 S.W.3d 454, 458 (Ky. App. 2003).

"Issues of law involving an administrative agency decision will be reviewed on a de novo basis." *Sebastian-Voor Properties, LLC v. Lexington-Fayette Urban County Gov't*, 265 S.W.3d 190, 195 (Ky. 2008) (citing *Aubrey v. Office of Attorney General*, 994 S.W.2d 516 (Ky. App. 1998)). With these standards in mind, we shall consider the parties' respective arguments.

We shall first address Stokes's argument in her cross-appeal that the circuit court erroneously held that her termination was supported by the record. KRS 164.360(3) sets forth the means by which a board may remove faculty of a university, and it specifically states that no "faculty member shall be removed except for incompetency, neglect of or refusal to perform his duty, or for immoral conduct." Stokes argues that neither the circuit court nor the hearing officer mentioned any of the required reasons to support her termination. On the other hand, KSU contends that the decision was not arbitrary or capricious and that

Stokes failed to perform her duties pursuant to the KSU Faculty Handbook on several occasions. Based upon our review of the administrative hearing and record, the hearing officer's findings of fact and conclusions of law, and the circuit court's order, we agree with KSU that substantial evidence supports the four charges against Stokes and, ultimately, her termination.

During the administrative hearing and in her filings, Stokes explained her version of the circumstances surrounding the four incidents, but the hearing officer, as the fact-finder, chose to rely on the witnesses KSU presented instead. There is ample evidence to support the charges that Stokes refused to accommodate a student with a disability, removed and excluded students from her class without due process, would not permit future class observations by KSU administrators, and spoke offensively to another member of KSU staff and threatened to have him removed by police if he returned to her classroom. Each of these incidents alone might not have led to the imposition of charges or her termination. But, together, these four incidents over the course of the school year certainly support termination in this instance.

Accordingly, the Board's decision to terminate Stokes was supported by substantial evidence, which established she failed to perform her duties as a KSU professor, and the circuit court's summary judgment affirming that decision was proper.

We shall next consider KSU's argument on direct appeal that Stokes was not entitled to back pay and benefits. This is, essentially, a two-part argument concerning Stokes's due process rights and whether she was entitled to relief pursuant to her 42 U.S.C. § 1983 claim. We agree with the circuit court that "KSU should have afforded [Stokes] a pretermination hearing or opportunity to respond when her pay was cut off." Because she did not have an opportunity to respond until the hearing 22 months later, Stokes was entitled to back pay between the time she was suspended without pay and the hearing. We specifically reject KSU's arguments to the contrary, including that it was protected by sovereign immunity and that the March 2016 meeting served as Stokes's opportunity to respond to her suspension without pay.

We shall adopt the following portion of the circuit court's January 3, 2022, Opinion and Order as our own (removing citations to the administrative and circuit court records):

### 2. [Stokes] was Denied Due Process

Next, [Stokes] raises several concerns about her denial of due process. . . .

KRS 164.360(3) provides "'[e]ach board [of regents of a university] . . . upon the recommendation of the president may remove any faculty member. . . . A . . . faculty member shall not be removed until after ten (10) days' notice in writing, stating the nature of the charges preferred, and after an opportunity has been given him to make defense before the board by counsel or otherwise

-15-

and to introduce testimony which shall be heard and determined by the board.'" On April 22, 2016, [the] KSU President issued the charges to [Stokes] in the Charge Supporting the Termination and Removal of Karah Stokes. On January 11, 2018, KSU conducted an administrative hearing in the KSU Board of Regents Board room. Thus, there was about a two (2) year period between the issuance of charges and the hearing.

KSU paid [Stokes] through September 15, 2016. On September 16, 2016, KSU suspended [Stokes] without pay, and she then requested a hearing. [Stokes's] suspension is supported by Section 2.8.4 of the Faculty Handbook, which states "'[s]uspension is temporary denial of employment with or without pay until the Board of Regents can give full consideration to the charges leading to suspension.'" First, [Stokes] filed an action in this Court and then voluntarily remanded the case for an administrative hearing, which caused some delay.

The Supreme Court has recognized the need for pre-termination hearings to afford employees adequate due process because of the interest in retaining employment for tenured public employees like [Stokes] who have a reasonable expectation of continued employment. *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532 (1985). A pre-termination hearing does not have to be elaborate or formal, but something less than a full evidentiary hearing is needed. *Id*. at 545 (citing *Mathews v. Eldridge*, 424 U.S. 319, 343 (1976)). *Loudermill* found that an opportunity to respond before one is deprived of a significant property interest, like one's livelihood, is needed before discharge. *Id*. at 544-45. After being presented with the charges, [Stokes] was not afforded a meeting, informal hearing, or an opportunity to respond until the administrative hearing in 2018. On September 16, 2016, [Stokes], a tenured professor, was deprived of a property interest because she was suspended without pay. While the Faculty Handbook determines that the suspension can be with or

-16-

without pay, the Faculty Handbook does not trump [Stokes's] constitutional right to due process. [Stokes] should have been given an opportunity to respond to the allegation before her pay was cut off. As such, [Stokes] appears to be entitled to back pay ranging from September 16, 2016, until she was given a hearing in June of 2018.

### 3. [Stokes] is Entitled to Relief Under 42 U.S.C. § 1983

The last argument [Stokes] raises is that she is entitled to relief under 42 U.S.C. § 1983. In contrast, [KSU] argues that [Stokes] is not entitled to relief because KSU is not a person, under § 1983, and that the University and officials are entitled to sovereign immunity on § 1983 claims. [KSU] would be protected from common law monetary damages through sovereign immunity. However, when there has been a constitutional violation, here a violation of due process, the Plaintiff may [be] entitled to injunctive relief in the form of reinstatement, back pay, restoration of retirement benefits, or other actions to make them whole. *See e.g.* 200 KAR 12:030. Additionally, courts have been afforded "broad equitable discretion to fashion back pay awards[.]" *David v. Caterpillar, Inc.*, 324 F.3d 851, 865 (7th Cir. 2003). Given that there has been a violation of [Stokes's] due process rights, [Stokes] is entitled to relief under 42 U.S.C. § 1983 for back pay. While she is not entitled to reinstatement because the Court has upheld the final action of the Board terminating her employment, she is entitled to be made whole through injunctive relief requiring KSU to pay back pay for the period of time between her suspension without pay and her hearing before the Board.

Accordingly, under the circumstances of this case, we find no error in the circuit court's decision to reverse the Board's decision not to award Stokes's back pay or other benefits.

For the foregoing reasons, the judgment and orders of the Franklin Circuit Court are affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT/CROSS-APPELLEE:

William E. Johnson
Frankfort, Kentucky

COMBINED REPLY BRIEF FOR APPELLANT/CROSS-APPELLEE:

W. Eric Branco
Frankfort, Kentucky

BRIEF FOR APPELLEE/CROSS-APPELLANT:

Edward E. Dove
Lexington, Kentucky